UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUDSON CORBIT,<br>    *Plaintiff*,<br>*v.*<br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br>    *Defendant*. | Civil No. 3:13cv1587 (JBA)<br><br>December 22, 2015 |

**RULING ON PLAINTIFF'S OBJECTION TO THE RECOMMENDED RULING**

Plaintiff Judson Corbit brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, seeking review of the final decision of Defendant, the Commissioner of Social Security, denying his Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). On April 20, 2015, Magistrate Judge Margolis issued a Recommended Ruling [Doc. # 29] granting Defendant's Motion [Doc. # 22] for an Order Affirming the Commissioner's Decision, and denying Plaintiff's Motion [Doc. # 16–1] for an Order Reversing the Decision of the Commissioner. (*See* Rec. Ruling at 29.) Plaintiff has filed a timely objection [Doc. ## 30, 33] to the Recommended Ruling, seeking reversal of the decision of the Commissioner denying his DIB and SSI benefits or, in the alternative, remand to the Commissioner for a rehearing. For the reasons that follow, Plaintiff's objection is overruled and the Recommended Ruling is approved and adopted.

**I.   Background**

The factual and procedural background of this action is detailed on pages one through twelve of the Recommended Ruling, which this Court incorporates by reference.

Briefly, on October 26, 2009, Plaintiff Judson Corbit applied for DIB and SSI benefits, claiming that he had been disabled since January 1, 2008, due to impulse control disorder, antisocial personality disorder, obsessive-compulsive disorder ("OCD"), attention deficit hyperactivity disorder ("ADHD"), depression, anxiety disorder, and attention deficit disorder ("ADD"). (*See* Certified Transcript of Administrative Proceedings, dated January 23, 2014 ("Tr.") at 122–23, 132–33, 168, 286–94, 324; *see also id.* at 58, 96, 320.) Mr. Corbit is a 33-year old man who lives with his parents and brother. (*Id.* at 53, 289, 346.) He graduated from a private special education high school and attended one year of technical school for auto mechanics. (*Id.* at 53, 328–29, 414, 464.) Mr. Corbit testified that he has held "[o]ver [twenty]" jobs (*id.* at 60), including food delivery person, mortgage broker, alarm technician, service writer, and auto mechanic (*see id.* at 60–64, 296–99, 307–12, 325, 331–41, 355–61). At the time of his hearing, he was working as an assistant manager at Monro Muffler and Brakes; he started working there in July 2011, and he was earning between $1,500 and $2,000 a month. (*Id.* at 54–55.)

Plaintiff was seen by a number of doctors between 2000 and 2012 (when the Administrative Law Judge ("ALJ") rendered his decision), several of whom were treating physicians and many of whom examined Plaintiff or his medical records in connection with his application for benefits.

Dr. Aaron Tessler treated Mr. Corbit from November 2000 until June 1, 2010 (*see id*. at 421–32) for "recurrent depression and for symptoms consistent with [ADD]" (*id.* at 401). Plaintiff reported that he stopped seeing Dr. Tessler in June 2010 because he could no longer afford the co-payments. (*Id.* at 455.) Between September 9, 2010 and August 31, 2011, Plaintiff was treated at Harbor Health Services, Inc. for his OCD, Tourette's ADHD,

and Seasonal Affective Disorder, Generalized. (*Id.* at 433–57.) He was discharged in August 2011 due to "[r]epeated [n]o [s]hows." (*Id.* at 436.)

On February 12, 2010, Plaintiff was examined by Dr. Steven Kahn, in connection with his application for benefits. (*Id.* at 402–04.) Dr. Kahn determined that Plaintiff suffered from OCD, which "negative[ly] [a]ffect[s] how he interacts with other people[] [and] make[s] other people dislike their interactions with him[,] and that seems to be what mostly got in the way of him holding a job for any length of time." (*Id.* at 403.)

John J. Warren, Ed.D. completed a Mental Residual Functional Capacity ("RFC") Assessment of Plaintiff nearly a month later, on March 3, 2010, and found Plaintiff to be "[u]nable to deal directly with the public[,]" and moderately limited in his ability to accept instructions from his supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior. (*Id.* at 128–29, 138–39.)

On October 7, 2010, Dr. Jesus Lago authored a Psychiatric Summary of Plaintiff in which he diagnosed Plaintiff with anxiety disorder, not otherwise specified ("NOS"), and schizoid personality disorder, and noted that Plaintiff's social interaction with people was "very poor." (*Id.* at 407.)

Three days later, Pamela Fadakar, PsyD completed a Mental RFC Assessment on Plaintiff in which she opined that Plaintiff was not significantly limited in his ability to carry out very short and simple instructions, and he was moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, and to complete a normal workday and workweek. (*Id.* at 150–51, 162–63.) Dr.

Fadakar concluded that Plaintiff was not suited to work with the public or in a highly social setting but can relate adequately with supervisors on a brief, superficial basis, and was best suited to work in an isolated setting where social contact was limited and where he could request help and maintain an adequate appearance. (*Id.* at 152, 164.)

On August 8, 2011, after performing a Psychological/Disability Examination on Plaintiff, Lance Hart, PhD, observed that Plaintiff's limitations "have mainly to do with the fact that there are restrictions on his ability to deal extensively with the public although it appears he can do this reasonably well in a structured situation like a job situation." (*Id.* at 415.) Dr. Hart also completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental), in which he concluded that Plaintiff had mild restrictions in his ability to make simple work-related decisions, understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, and respond appropriately to usual work situations and changes in a routine work setting. (*Id.* at 416–17.)

On May 2, 2012, after Plaintiff had been out of treatment for nine months, Geraldine Cassens, PhD, performed a neuropsychological evaluation of Plaintiff. (*Id.* at 460–70.) Dr. Cassens found that Plaintiff had difficulty following instructions in the work place "or adequately processing social interactions[,]" and that "[e]ven if he were to work in TOTAL isolation, it is likely that his ability to complete a job in a reasonable, cost effective way would be compromised by his own frustration and agitation." (*Id.* at 470.)

After Plaintiff's application for disability benefits was denied initially and upon reconsideration (*id.* at 168–74, 178–85; *see also id.* at 120–21, 142–43, 175), he requested a hearing before an ALJ (*id.* at 194; *see also id.* at 186–92). That hearing was held on March

21, 2012 before ALJ Roy P. Liberman; Plaintiff and his father, Judson X. Corbit testified. (*Id.* at 49–87.) A continued hearing was held on June 12, 2012, at which Plaintiff again testified, along with Albert J. Sabella, a vocational expert ("VE"). (*Id.* at 88–119.) Plaintiff was represented by counsel at the hearing and continues to be represented throughout the action. (*See id.* at 176–77.) ALJ Liberman issued his decision on June 26, 2012, finding that Plaintiff was not disabled between January 2008 and the date of the ALJ's opinion. (*Id.* at 26–44.) That decision was adopted by the Commissioner on August 30, 2013. (*Id.* 1–3.)

## II.  Standard of Review

### A.  Standard of Review of a Magistrate Judge's Recommended Ruling

This Court reviews *de novo* those portions of the Recommended Ruling to which an objection is made, and may adopt, reject, or modify, in whole or in part, the Recommended Ruling. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

### B.  Standard of Review of a Social Security Disability Determination

This Court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence 'is more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The substantial evidence standard also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel,* 23 F. Supp. 2d 179, 189 (D. Conn. 1998).

The Social Security Act provides that every individual who suffers from a "disability" is entitled to disability insurance benefits. *See* 42 U.S.C. § 423(a)(1). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

In reviewing disability claims, the agency must follow a five-step process. First, the agency will determine whether a claimant is engaged in substantial gainful activity and second, whether the claimant has an impairment which is of the required duration and which significantly limits her ability to work. If the claimant is engaged in substantial gainful activity or does not have a sufficiently severe impairment, the claim will be denied. *See* 20 C.F.R. § 404.1520(a)–(c). Third, the medical evidence of the claimant's impairment is compared with a list of impairments presumed severe enough to preclude any gainful work, and if the claimant's impairment matches or "equals" one of the listed impairments, the claimant qualifies for benefits without further inquiry. *See* 20 C.F.R. § 404.1520(d).

If the claimant does not qualify under the listed impairments at step three, the agency must take the fourth step of determining whether the claimant can perform her own past work, *see* 20 C.F.R. § 404.1520(e)–(f), and if not, take the fifth step of assessing the claimant's present job qualifications, and whether jobs exist in the national economy that claimant could perform. *See* 20 C.F.R. § 404.1520(g); *see also generally Heckler v. Campbell*, 461 U.S. 458, 460–61 (1983). In making this determination, the agency may rely on medical-vocational guidelines which establish, through rulemaking, the types and

numbers of jobs that exist in the national economy. *See Campbell,* 461 U.S. at 460. The burden of establishing a disability is on the claimant, and once the claimant demonstrates that she is incapable of performing her past work, the burden shifts to the agency to show that the claimant is capable of pursuing alternative work. *See Balsamo,* 142 F.3d at 80.

### III. Discussion

Plaintiff's objections to the Recommended Ruling can be summarized as follows: (1) Magistrate Judge Margolis and ALJ Liberman failed to consider Plaintiff's Pervasive Developmental Disorder, Not Otherwise Specified ("PDD-NOS") with which Plaintiff asserts Dr. Cassens diagnosed him in May 2012. (Pl.'s Obj. to Rec. Ruling [Doc. # 33] at 2–7); (2) ALJ Liberman erred in determining Plaintiff's RFC (*id.* at 7–11); (3) ALJ Liberman failed to follow the requirements of SSR 00-4p, and Magistrate Judge Margolis erred in concluding that the ALJ's mistake was harmless (*id.* at 11–17); and (4) ALJ Liberman erred in failing to consider Mr. Corbit's father's credibility (*id.* at 17–18).

### A. Failure to Consider Plaintiff's PDD-NOS

Plaintiff contends that Magistrate Judge Margolis erred in ignoring the "central diagnosis of Mr. Corbit's impairment," which according to Plaintiff, is PDD-NOS. (*Id.* at 2.) The Court is perplexed by this claim. While, admittedly, Dr. Cassens mentioned in the introduction to her evaluation that Plaintiff had a history of, among other things, "Atypical Pervasive Developmental Disorder," that disorder is not discussed anywhere else in her evaluation, nor in any other doctor's evaluation, nor in the testimony given at

the hearing. There is no indication that Dr. Cassens diagnosed Plaintiff with PDD,[1] let alone that it was the "central diagnosis of Mr. Corbit's impairment."

Plaintiff cites *Nowacki v. Astrue*, No. 3:09CV1579 (SRU) (WIG), 2010 WL 7864949, at *24 (D. Conn. July 19, 2010) and *Serrano v. Astrue*, 645 F. Supp. 2d 64, 66 (D. Conn. 2009) for the proposition that failure to include a diagnosed impairment in the disability analysis constitutes reversible error. (*See* Pl.'s Obj. at 5–7.) However, in *Nowacki* and *Serrano*, unlike in this case, there was evidence on the record that medical professionals had diagnosed the plaintiffs with specific impairments which were later omitted from the disability analysis. *Nowacki*, 2010 WL 7864949, at *10 ("[T]he diagnosis of pervasive developmental disorder NOS, which was made by every mental health doctor who treated [p]laintiff . . . ."); *see Serrano*, 645 F. Supp. at 65. "An impairment must be established by *medical evidence* consisting of signs, symptoms, and *laboratory findings*." *Serrano*, 645 F. Supp. at 66 (emphasis added); SSR 96–7P, 1996 WL 374186, at *1 (S.S.A. July 2, 1996) ("[A]n individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled."). There is no such evidence on the record in this case. Accordingly, Plaintiff's first objection is overruled. The Court finds no error in ALJ Liberman's and Magistrate Judge Margolis's treatment of Plaintiff's alleged PDD-NOS.

---

[1] Notably, this "diagnosis" does not appear in the summary or recommendations, which focus instead on anxiety, OCD, dyslexia, impulsivity, depression, and ADHD. (*See* Tr. at 469.)

B.  **RFC Determination**

Plaintiff objects to Magistrate Judge Margolis's and ALJ Liberman's RFC findings on four grounds: (1) they ignored Plaintiff's diagnosis of PDD-NOS (Pl.'s Obj. at 7); (2) in drawing a negative inference from Plaintiff's decision to stop treatment, ALJ Liberman and Magistrate Judge Margolis failed to consider Plaintiff's explanation that he could not afford treatment (*id.* at 8–9); (3) Magistrate Judge Margolis erred in failing to address Plaintiff's argument that ALJ Liberman should not have drawn a negative inference about Dr. Cassen's examination of Plaintiff based on the fact that Plaintiff was referred to her by his attorney and that she was paid for her work (*id.* at 10); and (4) Magistrate Judge Margolis erred in failing to address Plaintiff's argument that the ALJ's reliance on the vague concept of "stress" in his RFC findings was erroneous (*id.* at 11).

Plaintiff's first argument lacks merit for the same reasons discussed above; namely, there is no evidence in the record that Dr. Cassens diagnosed Plaintiff with PDD-NOS. Plaintiff's second claim fares no better. As Magistrate Judge Margolis noted in the Recommended Ruling, Plaintiff offered no explanation for his decision to stop treatment at Harbor Health Services, and his medical records state that he was discharged for repeatedly failing to show up.[2] ALJ Liberman did not, therefore, err in noting that "[t]he claimant did not consistently seek treatment for his impairments." (Tr. at 38.)

Plaintiff next contends that Magistrate Judge Margolis should have addressed ALJ Liberman's statement that Dr. Cassens's opinion was entitled to partial weight in part

---

[2] Plaintiff's explanation for stopping treatment with Dr. Tessler, by contrast, was that he could no longer afford Dr. Tessler's services. But, there is no evidence that the ALJ drew a negative inference from Plaintiff's decision to stop seeing Dr. Tessler.

9

because "the claimant underwent the examination that formed the basis of the Dr. Cassens' opinion not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence of the current appeal" and the "doctor was presumably paid for the report." (*Id.* at 40.) It is true that the Recommended Ruling does not address this part of the ALJ's reasoning. However, that is not a basis for finding that the Magistrate Judge erred.

ALJ Liberman listed three reasons for assigning partial weight to Dr. Cassens's opinion: (1) the claimant's work history; (2) the attorney referral; and (3) the fact that "Dr. Cassens examined the claimant long after he discontinued his treatment, and her assessment does not accurately assess the claimant's true functional abilities at his baseline level." (*Id.*) Magistrate Judge Margolis addressed only the third reason, finding that it *alone* provided a sufficient basis for assigning Dr. Cassens's opinion only partial weight. As Magistrate Judge Margolis noted, "Dr. Cassens examined plaintiff on May 2, 2012, almost eight months after plaintiff stopped receiving treatment. . . Dr. Cassens' opinion was rendered at a time, in her words, of a 'lack of treatment,' and '[u]nder [such] circumstances,' she concluded that 'it is predictable that [plaintiff] will continue to remain at high risk for losing any job that he obtains.'" (Rec. Ruling at 21 (quoting Tr. at 470).) For these reasons, this Court, like Magistrate Judge Margolis, finds that ALJ Liberman's decision to assign partial weight to Dr. Cassens's opinion was supported by substantial evidence.

Plaintiff's final contention with respect to the RFC findings is that Magistrate Judge Margolis did not adequately address Plaintiff's claim that the ALJ's "use of the term 'low stress'" in the RFC was "error . . . because it le[ft] unspecified the precise extent of the

10

individual's mental limitations." (Pl.'s Obj. at 23.) The Court disagrees. As Magistrate Judge Margolis explained in the Recommended Ruling, "the ALJ did not find that [P]laintiff must work in a low stress environment, but rather, that he 'will work best in a more isolated setting'" (Rec. Ruling at 22), which would enable Plaintiff to avoid anxiety triggered by social interaction (Tr. 34). A plain reading of the ALJ's RFC shows that the term "stress" describes the reaction that Plaintiff would likely have if required to interact with other people on a regular basis while at work. SSR 85–15 mandates that "impairment-related limitations created by an individual's response to demands of work" be included in the RFC assessment; the ALJ appropriately took into account SSR 85-15 by considering Plaintiff's difficulties with social interactions. SSR 85-15, at *6. Plaintiff invites this Court to attach greater significance to the word "stress" than the ALJ likely intended; this Court declines the invitation and holds that the inclusion of the word "stress" in the RFC was not error.

### C. SSR 00-4p

Plaintiff next contends that ALJ Liberman failed to follow the requirements of SSR 00-4p, and Magistrate Judge Margolis erred in concluding that the ALJ's mistake was harmless. SSR 00-4p states, in relevant part:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, (S.S.A.), 2000 WL 1898704 (Dec. 4, 2000).

Plaintiff argued in his appeal to Magistrate Judge Margolis that the ALJ had erred in failing to inquire of the VE whether there was an apparent unresolved conflict between his testimony and the DOT. Defendant conceded, and Magistrate Judge Margolis agreed, that the ALJ had erred. (Rec. Ruling at 25.) However, Magistrate Judge Margolis determined that the error was harmless because there was no apparent conflict between the VE's testimony and DOT and Plaintiff failed to assert one. (*Id.* at 27.)

As Magistrate Judge Margolis noted, failure to comply with the procedural inquiry set forth in SSR 00-4p does not, by itself, mandate a remand. Such procedural error "could . . . [be] harmless, where there is no conflict [between the VE's testimony and the DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1154, n.19 (9th Cir. 2007); *see also Martin v. Comm'r of Soc. Sec.*, No. 5:06-CV-720 (GLS/DEP), 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008) ("[T]he ALJ's failure to inquire whether or not a conflict existed was harmless simply because [Plaintiff] failed to assert any conflict between the DOT and [VE] testimony."); *Sawyer v. Colvin*, 512 F. App'x 603, 610 (7th Cir. 2013) ("[I]f there is not an actual conflict between the [VE's] testimony and the [DOT], a claimant cannot possibly be harmed by an ALJ's failure to inquire."); *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony . . . and the . . . DOT, we conclude that this error was harmless because there were no conflicts."); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("In sum, the ALJ's error in failing to ask the [VE] about possible conflicts between his testimony and the [DOT] was harmless, since no conflict appears to exist.").

In this case, as Magistrate Judge Margolis noted, there is no apparent conflict between the VE's testimony and the DOT, and Plaintiff's attempts to argue otherwise now, for the first time, are unavailing. It is well established that an argument raised for the first time in an objection to a recommended ruling is waived. *See U.S. Bank Nat. Ass'n v. 2150 Joshua's Path, LLC*, No. 13-CV-1598 (SJF), 2014 WL 4542950, at *2 (E.D.N.Y. Sept. 10, 2014) ("'In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'" (quoting *Zhao v. State University of New York*, No. 04 Civ. 0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011)); *Diaz v. Portfolio Recovery Associates, LLC*, No. 10 Civ. 3920, 2012 WL 1882976, at * 2 (E.D.N.Y. May 24, 2012) ("A district court will generally not consider arguments that were not raised before the magistrate judge."); *Carroll v. David*, No. 9:04-CV-0307, 2009 WL 666395, at *1 (N.D.N.Y. Mar. 11, 2009) ("In is generally accepted that an argument not raised before the magistrate judge is waived and cannot be asserted for the first time before the district court."); *cf. Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–38 (2d. Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offer[s] no justification for not offering the testimony at the hearing before the magistrate." (internal quotation marks omitted)). As Chief Judge Hall reasoned in *Burden v. Astrue*, "[i]f this court were to consider these untimely arguments, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Recommended Ruling has issued to advance additional arguments." 588 F. Supp. 2d 269,

279 (D. Conn. 2008). Accordingly, the Court finds that Plaintiff has waived his arguments regarding the apparent conflicts between the VE's testimony and the DOT.

### D. Mr. Corbit's Father's Credibility

Plaintiff's final claim is that the ALJ erred in failing to consider the testimony of Judson X. Corbit, Plaintiff's father. Plaintiff does not challenge the proposition that "an ALJ must make a credibility finding of lay witness testimony only when that testimony is critical to the adjudication of an application." *Burden*, 588 F. Supp. 2d at 278. Rather, Plaintiff appears to contend that Mr. Corbit's testimony was critical because it pertained to information that Plaintiff "did not have insight to address," such as Plaintiff's "inability to adapt to change, inability to live independently, and [his propensity to do] repetitive activities like enter[ing] and re-entering a doorway multiple times." (Pl.'s Obj. at 17.)

The Court is not persuaded. "Testimony is critical to the adjudication of an application when the failure to address such testimony undermines the ALJ's decision, e.g., when the testimony ignored is that of the claimant herself." *Burden*, 588 F. Supp. 2d at 278. The testimony Plaintiff points to here was not critical to the adjudication of Plaintiff's application because, as Magistrate Judge Margolis found, Plaintiff's father's testimony was not very different from Plaintiff's own testimony and from other evidence in the record. Indeed, Plaintiff testified about two of the three subjects he now claims only his father had the insight to address: his ability to live independent and his ability to do repetitive activities. Specifically, when asked if he could "establish [his] own household," Plaintiff replied, "[n]o. . . . I would be overwhelmed." (Tr. 73–74.) Plaintiff additionally testified that he does "a lot of repetitive counting"; he has to "double check things such as doors being locked"; he washes his hands "probably more than [he] really ha[s] to"; he

14

does "a lot of tapping" of his hands and every time he taps on one side, he "ha[s] to tap on the other side"; and he has to recheck his work multiple times to "make sure things are correct." (*Id.* at 68, 75, 102.)

Plaintiff's medical records provide additional evidence of his inability to live independently and his propensity to engage in repetitive behaviors. (*See, e.g.,* Tr. at 402, 410, 450, 457, 469.) They also provide evidence of Plaintiff's difficulties responding to change. Dr. Hart noted in his Medical Source Statement of Ability to do Work-Related Activities that Plaintiff has mild difficulty "[r]espond[ing] appropriately to usual work situations and to changes in a routine work setting." (*Id.* at 417.) Dr. Cassens similarly stated that based on Plaintiff's performance in the Wisconsin Card Sorting Task, it was "clear that forewarning of transitions would help him as would decreasing unexpected events," indicating that Plaintiff struggled with adapting to changes. (*Id.* at 468.) Dr. Cassens reiterated in her summary and recommendations that Plaintiff easily becomes "frustrate[ed]/agitat[ed]" and has "difficulty with transitions or unforewarned events." (*Id.* at 470).

Because the substance of Plaintiff's father's testimony was repeated in other places on the record, Plaintiff's father's testimony cannot be said to have been critical to the ALJ's determination, and therefore, it was not necessary for the ALJ to conduct an analysis of his credibility.

### IV.   Conclusion

For the foregoing reasons, Plaintiff's Objection [Doc. ## 30, 33] is OVERRULED and the Recommended Ruling [Doc. # 29] is APPROVED and ADOPTED.  Plaintiff's Motion [Doc. # 16] to Reverse the Decision of the Commissioner is DENIED and

Defendant's Motion [Doc. # 22] to Affirm the Decision of the Commissioner is GRANTED, as set forth in the Recommended Ruling. The Clerk is directed to enter judgment and to close the case.

                              IT IS SO ORDERED.

                              /s/
                          Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of December, 2015.